1  Ronald L. Richman, SBN 139189
   Susan J. Olson, SBN 152467
2  Bullivant Houser Bailey PC
   601 California Street, Suite 1800
3  San Francisco, CA  94108
   e-mail: ron.richman@bullivant.com
4  e-mail: susan.olson@bullivant.com
   Telephone:     (415) 352-2700
5  Facsimile:     (415) 352-2701

6
   Attorneys for Plaintiffs
7

8                   UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10

11
   BOARD OF TRUSTEES OF THE LABORERS      Case No.: C 07-03195 CRB
12 HEALTH AND WELFARE TRUST FUND
   FOR NORTHERN CALIFORNIA; BOARD
13 OF TRUSTEES OF THE LABORERS           **MEMORANDUM OF POINTS AND**
   VACATION-HOLIDAY TRUST FUND FOR       **AUTHORITIES IN SUPPORT OF**
14 NORTHERN CALIFORNIA; BOARD OF          **PLAINTIFFS' MOTION FOR**
   TRUSTEES OF THE LABORERS PENSION       **PRELIMINARY INJUNCTION**
15 TRUST FUND FOR NORTHERN
   CALIFORNIA; and BOARD OF TRUSTEES      **FRCP § 65**
16 OF THE LABORERS TRAINING AND
   RETRAINING TRUST FUND FOR
17 NORTHERN CALIFORNIA,                   Date:      May 9, 2008
                                          Time:      10:00 a.m.
18                 Plaintiffs,            Ctroom:    8

19         vs.

20 ALICIA A. SAVAGE, individually and dba
   SAVAGE BUILDING MAINTENANCE; and
21 FELICIA L. SAVAGE, individually and dba
   SAVAGE BUILDING MAINTENANCE,
22
                   Defendants.
23

24

25

26

27

28

## I. Introduction

Plaintiffs Board of Trustees Of The Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California are the Plaintiffs herein. The Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California ("the Trust Funds") are entitled to an Order granting a preliminary injunction compelling Defendant ALICIA A. SAVAGE individually and dba SAVAGE BUILDING MAINTENANCE; and FELICIA L. SAVAGE, individually and dba SAVAGE BUILDING MAINTENANCE to submit to an audit of their business records by an auditor from the Plaintiffs Trust Funds to determine whether all employees covered by their collective bargaining agreement with the Laborers Union, District Council for Northern California, have been fully reported during the effective period of that collective bargaining agreement for the period August 21, 2001 through March, 2008, on the grounds that pursuant to FRCP § 65, Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) and the All Writs Act, 28 U.S.C. § 1651(a), there is a reasonable probability that plaintiffs will prevail on their underlying complaint, plaintiffs will suffer irreparable injury if such relief is not granted, the legal remedies are inadequate to provide the necessary relief, any prejudice to defendants will be comparatively minimal, and that plaintiffs are entitled to such preliminary relief as a matter of law.

## II. Background

Each of the Plaintiffs Trust Funds is an express trust created by written Trust Agreements pursuant to collective bargaining agreements between the Northern California District Council of Laborers and an employer association representing construction industry employers doing business in Northern California. The Trust Funds provide a variety of benefits for laborers, retired laborers and other related covered employees on whose behalf contributions are made pursuant to collective bargaining agreements. See Declaration of John J. Hagan In Support of Motion for Preliminary Injunction ("Hagan Declaration") at pg. 2 lines 14-19.

1    The key documents outlined herein are the Trust Agreements for the Trust Funds and

2  the Laborers' Master Agreement between Associated General Contractors of California, Inc.

3  and the Northern California District Council of Laborers ("the Union") and the Memorandum of

4  Agreement pursuant to which individual employers become signatory to the Master Agreement.

5  The Memorandum of Agreement incorporates the terms of the Master Agreement, and provides

6  that the individual employer agrees to be bound by all obligations of the Trust Agreements.  See

7  Hagan Declaration at pg. 3 lines 1-7.

8    Pursuant to the Master Agreement and the Trust Agreements, a signatory employer is

9  obligated to contribute to the Laborers Trust Funds for benefits based upon the number of hours

10  of covered work by their employees and subcontractors.  It is the usual practice of the Fund

11  Office to send each employer a monthly Combined Employer Report of Contributions form

12  showing the contribution rate per hour. The employer is to fill out the form, showing the total

13  number of hours of covered work performed in the reporting month, and calculating the amount

14  due for the employer's contribution. The Employer Report also identifies the employees, by

15  name and social security number, whose hours are being reported, and the hours worked by

16  them for the reported month. The employer is to return the completed Employer Report, along

17  with its payment for the contribution amount, by the 25th day of the month following the month

18  in which the hours were worked. See Hagan Declaration at pg. 3 lines 8-18.

19    The Fund Office collects employer contributions and deposits them in a bank account

20  maintained for the Trust Funds in San Francisco, California. The Fund Office also administers

21  the Trust Funds' employee benefit plans. The Trust Funds depend upon the employer self-

22  reports to collect contributions due for employee fringe benefits and to credit plan participants

23  with service hours. The Trust Funds also conduct random and special payroll audits of

24  employers, and may also review employee check stubs and certified payroll records on

25  particular jobs, to determine whether all hours are being properly reported and paid. It is part of

26  my duties as Accounts Receivable Manager to arrange for and supervise these audits and the

27  examination of other records such as certified payroll reports and employee check stubs. It is the

28  Trust Fund's usual practice, in conducting an audit, to send a field auditor to examine the

1   payroll, tax, and subcontracting records of the employer, along with any other documents that

2   would be pertinent to determining the number of hours of covered work done. The auditor

3   records the hours, and then the auditor or other Fund Office personnel compare them with the

4   employer's reported hours to determine whether there is a discrepancy. If there are unreported

5   hours, a Statement of Contributions Due from Audit is generated by applying the contribution

6   rate applicable for the work period to the unreported hours. In addition, a Statement of

7   Liquidated Damages is generated, using the interest rate and liquidated damages amounts

8   specified in the collective bargaining agreement. If there are over-reported hours, a Statement of

9   Over Reported Hours is generated.  See Hagan Declaration at pg. 3 line 19 – pg. 4 line 9.

10          Plaintiffs Trust Funds, established under Trust Agreements, consist of all employee

11   fringe benefit contributions that are to be made by employers pursuant to collective bargaining

12   agreements as well as all returns on contributions and any other property received or held by the

13   Trust Funds.  See Trust Agreement – Laborers Pension Trust Fund For Northern California, a

14   copy of page one which is attached as Exhibit A to the Hagan Declaration.  See also Article II,

15   Section 1, of the Trust Agreement establishing the Laborers Pension Trust Fund for Northern

16   California, pages 5-6, a copy of which is attached hereto as Exhibit B to the Hagan Declaration.

17          The Trust Agreements for the Laborers Health and Welfare Trust Fund for Northern

18   California, the Laborers Vacation-Holiday Trust Fund for Northern California and the Laborers

19   Training and Retraining Trust Fund for Northern California contain the same terms and

20   conditions as the Trust Agreement for the Laborers Pension Trust Fund for Northern California.

21   So the same references to the Laborers Pension Trust Fund for Northern California apply to the

22   Laborers Health and Welfare Trust Fund for Northern California, the Laborers Vacation-

23   Holiday Trust Fund for Northern California and the Laborers Training and Retraining Trust

24   Fund for Northern California. See Hagan Declaration at pg. 4 lines 17-24.

25          Further, within the Laborers Pension Trust Fund for Northern California, Amendment

26   No. 15 To Trust Agreement Establishing The Laborers Pension Trust Fund for Northern

27   California provides for the establishment and maintenance of the Annuity Fund and Annuity

28   Plan.  Amendment 15 further designates the Trustees of the Pension Trust Fund as named

1    fiduciaries with exclusive authority to control, manage and administer the Annuity Fund and

2    Plan within the Laborers Pension Trust Fund for Northern California. A copy of <u>Amendment</u>

3    <u>No. 15</u> is attached as <u>Exhibit C</u> to the Hagan Declaration.

4    　　　　The Trust Funds provide a wide variety of benefits for laborers, retired laborers and

5    other related covered employees on whose behalf employee fringe benefit contributions are

6    made pursuant to a collective bargaining agreement. The duties of the Boards of Trustees to the

7    Trust Funds include ensuring that employers who are signatories to the collective bargaining

8    agreements comply with the terms and conditions of the collective bargaining agreements,

9    namely, payments and contributions to the Trust Funds on behalf of the covered employees.

10   The Trust Agreement permits the Boards of Trustees to seek judicial relief to recover prompt

11   payment of contributions due, including the recovery of delinquent contributions, and further, to

12   seek all attorneys' fees and costs incurred in a lawsuit to recover the delinquent contributions.

13   See Hagan Declaration at pg. lines and a copy of the Pension Trust Agreement, Article IV,

14   Section 3, which is attached as <u>Exhibit D</u> to the Hagan Declaration.

15   　　　　The Pension Trust Agreement further provides that an employer must submit to an audit

16   by the Board of Trustees and in so doing, produce its books and financial records to the Board

17   of Trustees. A copy of the Pension Trust Agreement, Article IV, Section 7, is attached as

18   <u>Exhibit E</u> to the Hagan Declaration.

19   　　　　On or about August 21, 2001 Defendant Alicia A. Savage, on behalf of and as owner of

20   Savage Building Maintenance, entered into a written Memorandum Agreement with the

21   Northern California District Council of Laborers. A copy of the Memorandum Agreement is

22   attached as <u>Exhibit F</u> to the Hagan Declaration. The Memorandum Agreement has not been

23   terminated. See Hagan Declaration at pg. 5 lines 18-21.

24   　　　　For purposes of the audit, Plaintiffs Trust Funds require access to the following records

25   in order to conduct a meaningful audit, for the audit period August 21, 2001 through March

26   2008 :

27   　　　　　　　California Quarterly Report of Wages, Form DE-6; Federal Tax
　　　　　　　　　Forms W-3/W-2 and 1069/1099; Payroll Registers/Journals;
28   　　　　　　　Individual Earnings Records; Source Records, including time cards
　　　　　　　　　and time card summaries for all employees; contribution reports

10459666.
1

-5-

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION

1      for all trust funds; workers' compensation reports; certified payroll
    reports; personnel records indicating job classifications and
2      hire/termination dates; cash disbursement journal; vendor invoices;
    copies of subcontract agreements; cash receipts journal; general
3      ledger; job cost records; records of related entities; and any other
    books and records that may be necessary to complete the auditor's
4      determination or provide additional explanation.

5  See Hagan Declaration at pg. 5 line 23 – pg. 6 line 2.

6  On October 9, 2007 Plaintiffs Trust Funds filed their First Amended Complaint for

7  Damages for Breach of Collective Bargaining Agreement and For A Mandatory Injunction

8  ("First Amended Complaint") seeking a mandatory injunction compelling defendants to submit

9  to an audit of their books and records.  Defendants failed to respond.  On November 21, 2007

10  the Clerk of Court entered the default of Defendants.  See Declaration of Ronald L. Richman In

11  Support of Motion for Preliminary Injunction at pg. 2 lines 6-10.

12  Based on Defendants' default, Plaintiffs Trust Funds seek an preliminary mandatory

13  injunction ordering Defendants to produce their business records and submit to an audit of their

14  books and records by Plaintiffs Trust Funds.

15  **III.  Legal Argument**

16  **A.  This Court Has Jurisdiction To Grant the Injunction**

17  This court has jurisdiction under section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3)

18  and the All Writs Act, 28 U.S.C. § 1651(a), to issue a preliminary injunction to compel

19  Defendants to submit to an audit.  Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), provides

20  that a civil action may be brought by a "…fiduciary (A) to enjoin any act or practice which

21  violates any provision of this title or terms of the plan, or (B) to obtain other appropriate relief

22  (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the

23  plan."  The First Amended Complaint seeks to enforce both ERISA, section 515, and the terms

24  of the plan.  Section 515 of ERISA provides:

25      Every employer who is obligated to make contributions to a
    multiemployer plan under the terms of the plan or under the terms
26      of a collectively bargained agreement shall, to the extent not
    inconsistent with law, make such contributions in accordance with
27      the terms and conditions of such plan or such agreement.

28

1    Plaintiffs Trust Funds are trustees for multiemployer plans established and maintained

2    pursuant to collective bargaining agreements and trust agreements that require employer

3    contributions into each of the trust funds, identified in the caption, based upon hours of covered

4    work performed by the signatory employer's employees.  A signatory employer's failure to

5    contribute to the Trust Funds is a violation of Section 515 of ERISA and the terms of the

6    collective bargaining agreement.

7    Section 502(a)(3) of ERISA authorizes this Court to grant equitable relief, including a

8    preliminary mandatory injunction, when warranted to enforce Section 515 of ERISA or the

9    terms of the collective bargaining agreement or plan.  See Central States Pension Fund v.

10   Central Transport, Inc., 472 U.S. 559, 560 (1985).

11                    **B. Plaintiffs Are Entitled to A Mandatory Injunctive Order**

12   Both the Master Agreement and the Trust Agreements provide that a signatory employer

13   shall submit to an audit by the Trust Funds upon demand.  Section 7 of the Master Agreement

14   has consistently provided that "[e]ach Individual Employer, upon request of any Trust Fund

15   specified in this Agreement, shall permit a Trust Fund Auditor to review any and all records

16   relevant to the enforcement of the provisions of this Agreement pertaining to the Trust Funds."

17   See Exhibit E to the Hagan Declaration.

18   The Trust Agreements are essentially identical.  As example, the Trust Agreement for

19   the Laborers Pension Fund for Northern California at Article IV, Section 7, provides the

20   following, in pertinent part:

21            Upon request in writing from the Board, any Individual Employer
              will permit a certified public accountant selected by the Board to
22            enter upon the premises of such Individual Employer during
              business hours, at a reasonable time or times, and to examine and
23            copy such books, records, papers or reports of such Individual
              Employer as may be necessary to determine whether the Individual
24            Employer is making full and prompt payment of all sums required
              to be paid by him or it to the Fund.
25
     See Exhibit E  to the Hagan Declaration.
26
     The right to audit the signatory employer is so necessary to the enforcement of § 515 of
27
     ERISA and of such collective bargaining agreements and plans, that the courts recognize it to be
28

10459666.
1

-7-

1    a well established statutory, as well as contractual, right.  See <u>Central States Pension Fund v.</u>

2    <u>Central Transport, Inc.</u>, supra, at 472 U.S. at 568-69.

3         The Trust Funds have no other means for accurately determining the hours of covered

4    work performed by an employer and so the amount of contributions owed under the Master

5    Agreement than by obtaining periodic audits of signatory employers.  The Trust Funds have not

6    had such an audit of defendant since 2001, and despite plaintiffs' demands for an audit, and

7    defendants; obligation to allow an audit, defendants have not allowed the Trust Funds' auditor

8    to examine their business records.  See Hagan Declaration at pg. 6 lines 4-10.

9         Accordingly, the Trust Funds seek the court's order compelling defendants to submit to

10   an audit.  Such an audit is needed before plaintiffs proceed with any claim for money damages

11   for unpaid contributions, interest, and liquidated damages.  Thus, plaintiffs need a preliminary

12   mandatory injunction against defendant to compel an audit.

13   **C.  Equity Supports Plaintiffs' Request For A Mandatory Injunction.**

14        Whether the underlying action is viewed as one seeking a mandatory injunction or as

15   one seeking a money judgment for delinquent employer contributions, plaintiffs are likely to

16   succeed on the merits.  The Trust Funds have the right under ERISA, the Master Agreement and

17   Trust Agreements to conduct the audit.  If defendants are found to have failed to report any

18   hours of covered work, defendants are liable under ERISA and the Master Agreement and Trust

19   Agreements for the delinquent contributions.

20        Plaintiffs will suffer irreparable injury if they are not granted a preliminary mandatory

21   injunction compelling defendant to submit to an audit.  The only way to determine whether a

22   signatory employer has fully and properly reported covered work performed under the Master

23   Agreement is to audit the employer's business records.  While information voluntarily submitted

24   by employees and information subpoenaed from state agencies may serve as a check to confirm

25   whether the employer is properly reporting covered work, such information is incomplete.

26   Without an audit of the employer's business records the trust funds have no way to determined

27   the full amount of covered work performed and so the full amount of employer contributions

28   owed.  See Hagan Declaration at pg. 6 lines 10-19.

1    Absent such an audit, Plaintiffs Trust Funds are unable to discover unreported or under-

2    reported covered work and would be unable to collect employer contributions owed for such

3    work. Employees whose work is not reported or is under-reported may lose eligibility for health

4    and welfare benefits, vacation and holiday pay, and pension benefits. Even if such covered

5    work is later discovered and proven to the trust funds, lack of timely health and welfare

6    coverage may result in irreparable injury to participants or their beneficiaries; and, though the

7    plan will be required to provide earned pension benefits, it may be too late for the plan to obtain

8    payment from the employer for such pension benefits, so irreparably injuring the Pension Fund.

9    See Hagan Declaration at pg. 6 lines 20-27.

10    In comparison, any prejudice to defendant caused by granting such preliminary relief

11    would be minimal. Defendants are required by law and by contract to grant such audits. The

12    only prejudice is the inconvenience of having to submit to such an audit at a time not of their

13    choosing. The preliminary relief sought here would not change the status quo or relative

14    positions of either party; it would merely uncover the information necessary to determine the

15    amount of any liability.

16    Because an audit is necessary to serve the purposes § 515 of ERISA, that the obligation

17    of signatory employers to contribute to employee benefit plans pursuant to the terms of the

18    collective bargaining agreement or plan, granting such a preliminary mandatory injunction for

19    such audit would not disserve a public interest but, to the contrary, would serve that public

20    interest.

21    Finally, the Court's granting of a preliminary injunction to compel defendants to submit

22    to an audit will promote resolution of the underlying claim. If defendants are found to have

23    fully reported the number of hours of covered work performed by their employees during the

24    period of the collective bargaining agreement, then plaintiffs will voluntarily dismiss their

25    action and absorb their own attorney's fees and costs. If defendants are found to have failed to

26    fully report covered work performed by its employees, then plaintiffs will have to file an

27    amended complaint to allege the amount of contributions, liquidated damages and interest

28    claimed, serve said amended complaint, and so provide defendants a new opportunity to raise

1   any answer in defense.

2       **IV.  <u>Conclusion</u>**

3       For the reasons set forth above, Plaintiffs Trust Funds respectfully request that this Court

4   grant a preliminary injunction compelling defendants to submit to an audit to determine the full

5   number of hours of covered employment performed by its employees during the period of the

6   collective bargaining agreement.

7   DATED:  March 19, 2008

8

9                                                    BULLIVANT HOUSER BAILEY PC

10

11                                  By _____
                                                    Ronald L. Richman

12                                             Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10459666.
1

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION